UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ALESSA D.,<br><br>  Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of the Social Security Administration,<br><br>  Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:22-cv-00792<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Alessa D.[1] brought this action for judicial review of the denial of her application for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration.[2] The Administrative Law Judge ("ALJ") who addressed Ms. D.'s application determined she did not qualify as disabled.[3] Ms. D. argues the ALJ erred by failing to evaluate certain medical opinion evidence, resulting in a residual functional capacity determination unsupported by substantial evidence.[4] Because the evidence at issue does not qualify as medical opinion evidence under the social security regulations, Ms. D. has demonstrated no error in the ALJ's treatment of this evidence. The record shows the ALJ

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the plaintiff is referred to by her first name and last initial only.

[2] (*See* Compl., Doc. No. 4); *see also* 42 U.S.C. §§ 401–434, 1381–1385.

[3] (Certified Tr. of Admin. R. ("Tr.") 15–33, Doc. No. 12.)

[4] (*See* Opening Br. 1, 15–19, Doc. No. 15.)

1

applied the correct legal standards and his findings are supported by substantial evidence. Therefore, the Commissioner's decision is affirmed.[5]

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 11.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[9] *Id.* at 1154 (internal quotation marks omitted).

[10] *Id.* (internal quotation marks omitted).

from being supported by substantial evidence."[11] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

---

[11] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The claimant has the burden, in the first four steps, of establishing disability.[16] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. D. applied for disability insurance benefits and supplemental security income on July 6, 2020.[18] She previously worked as a flight attendant, and she alleged disability beginning on October 20, 2017, when she struck her head during a turbulent flight and sustained a traumatic brain injury.[19] After an administrative hearing,[20] the ALJ issued a decision on June 29, 2022, finding Ms. D. not disabled and denying benefits.[21] At step two of the sequential evaluation, the ALJ found Ms. D. had the severe impairments of "post-concussion syndrome; status-post traumatic brain injury; post-traumatic headaches; adjustment disorder; and an anxiety disorder," and the nonsevere impairment of obstructive sleep apnea.[22] At step three, the ALJ found these impairments did not meet or medically equal an impairment listing.[23]

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 15.)

[19] (*See* Tr. 15, 654.)

[20] (*See* Tr. 43–76.)

[21] (Tr. 15–33.)

[22] (Tr. 18.)

[23] (*Id.*)

The ALJ found Ms. D. had the residual functional capacity ("RFC")[24] to perform light work, with additional exertional and functional limitations.[25] As relevant here, the ALJ found:

> [S]he is incapable of climbing ladders, ropes, and scaffolds and is incapable of crawling; she is capable of occasionally climbing ramps and stairs and occasionally balancing, stooping, kneeling, and crouching; . . . she is able to perform work that does not require driving as a part of work duties or require any work related exposure to hazards, such as unprotected heights and unguarded moving machinery; she is capable of traveling to and from a single workplace but is otherwise incapable of traveling for work; she is able to understand, remember, and carry out simple instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline, such as work on a conveyor belt or assembly line, or within high quota demands, such as work with an hourly quota requirement; she is able to make occasional simple work-related decisions in a job involving only occasional changes in a routine work setting; she is able to sustain concentration and persist at simple tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday; and she is capable of no more than occasional interaction with the general public, co-workers, and supervisors.[26]

After considering the testimony of a vocational expert, the ALJ found Ms. D. could not do past work but could perform other jobs existing in significant numbers in the national economy.[27]

Therefore, the ALJ found Ms. D. not disabled and denied her claims.[28]

---

[24] A claimant's RFC is the most she can do in a work setting considering her limitations. *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996). In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 SSR LEXIS 5, at *5. The ALJ considers all relevant medical and other evidence in the record. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[25] (*See* Tr. 22.)

[26] (*Id.*)

[27] (Tr. 30–32.)

[28] (Tr. 32–33.)

The Appeals Council denied Ms. D.'s request for review,[29] making the ALJ's decision final for purposes of judicial review.

ANALYSIS

Ms. D. argues the ALJ erred by failing to evaluate medical opinion evidence from two sources: Jon Pertab, Ph.D., and Mark Stephens, DPT.[30] Ms. D. contends this error resulted in a residual functional capacity determination which was unsupported by substantial evidence.[31]

As explained below, Dr. Pertab and Mr. Stephens did not provide "medical opinions" as defined in the applicable social security regulations. Therefore, the ALJ was not required to evaluate this evidence under the framework applicable to medical opinion evidence. The record shows the ALJ properly considered this evidence and applied the correct legal standards, and his RFC findings are supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed.

**A. Legal Standards**

An ALJ is required to assess the persuasiveness of medical opinion evidence, including explaining how he considers the supportability and consistency of medical opinions.[32] However, agency regulations define "medical opinion" narrowly as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in certain enumerated

---

[29] (Tr. 1–3.)

[30] (*See* Opening Br. 1, 15–17, Doc. No. 15.)

[31] (*Id.* at 1, 17–19.)

[32] 20 C.F.R. §§ 404.1520c(b)(2), (c), 416.920c(b)(2), (c).

work-related abilities.[33] These include the claimant's ability to perform "physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions," and "mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."[34]

The regulations differentiate "medical opinions" from "objective medical evidence," which is defined as "medical signs, laboratory findings, or both."[35] And both these categories are distinguished from "other medical evidence," which includes "judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."[36]

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."[37] "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[38]

---

[33] *Id.* §§ 404.1513(a)(2), 416.913(a)(2).

[34] *Id.* §§ 404.1513(a)(2)(i)–(ii), 416.913(a)(2)(i)(A)–(B).

[35] *Id.* §§ 404.1513(a)(1), 416.913(a)(1).

[36] *Id.* §§ 404.1513(a)(3), 416.913(a)(3).

[37] *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

[38] *Id.* at 1010.

## B. Evidence from Dr. Pertab

Dr. Jon Pertab, Ph.D, performed a neuropsychological assessment of Ms. D. on April 18, 2019.[39] Dr. Pertab conducted an interview and cognitive testing and found Ms. D. displayed "functioning in the anticipated range in most areas of cognitive functioning," including "verbal reasoning, most aspects of visually based reasoning, processing speed for simple tasks, new learning and memory, and most aspects of executive functioning (abstraction, problem solving, logical reasoning, fluency, mental flexibility)."[40] However, Ms. D. displayed "lower than anticipated performance" in the area of attention, including "difficulties with attention allocation and sustained attention."[41] Dr. Pertab stated that "[i]n naturalistic settings she may experience memory and concentration issues secondary to impaired attention resources."[42] Dr. Pertab also described research regarding typical cognitive impacts of mild traumatic brain injury and concussion, including "overall reduction in attention capacity, reduced processing speed, lapses

---

[39] (Tr. 982–93.)

[40] (Tr. 983.)

[41] (*Id.*) Specifically, Dr. Pertab described the testing results as follows:

> She had difficulties tracking her previous responses (7th percentile). She had lapses in attention where she failed items within her range on at least four occasions during testing—she self-corrected about 50% of the time. In the highest demand tasks her mental efficiency (processing speed) and control deteriorated to approximately the 5th percentile rank with patchy performance on extended high demand tasks. Overall attention span was slightly lower than expected with scores clustering at the 25th percentile rank.

(*Id.*)

[42] (*Id.*)

in attention, or vulnerability to cognitive fatigue."[43] Dr. Pertab noted "[t]hese patterns are highly consistent with what is observed in [Ms. D.]"[44]

The ALJ cited Dr. Pertab's evaluation twenty-two times in his decision, and he discussed the cognitive testing results in detail in the RFC analysis.[45] But the ALJ did not evaluate the persuasiveness of the report under the framework applicable to medical opinion evidence. Ms. D. contends this was error.

Contrary to Ms. D.'s argument, Dr. Pertab's evaluation does not contain medical opinions as defined in agency regulations. The cognitive testing results in Dr. Pertab's report are objective medical evidence, not medical opinions. And Dr. Pertab's general statement that Ms. D. "may experience memory and concentration issues"[46] is insufficient to qualify as a medical opinion under agency regulations. This statement does not identify any particular limitations in Ms. D.'s ability to perform work-related activities, and it does not address what Ms. D. could still do despite her impairments.[47] Similarly, Dr. Pertab's statement that Ms. D.'s presentation was consistent with research on cognitive impacts of brain injury[48] did not contain an opinion regarding particular, work-related functional limitations or abilities. Thus, these statements are

---

[43] (Tr. 984.)

[44] (*Id.*)

[45] (*See* Tr. 20–21, 26–29.)

[46] (Tr. 983.)

[47] *Cf. Roy v. Comm'r, Soc. Sec. Admin.*, No. 22-5036, 2022 U.S. App. LEXIS 34770, at *9 (10th Cir. Dec. 16, 2022) (unpublished) (finding a medical source's statement did not qualify as a medical opinion where it did "not provide any particular manipulative limitations or address what [the claimant] could still do").

[48] (*See* Tr. 984.)

"other medical evidence," not medical opinions.[49]  Ms. D. does not identify any other statement in Dr. Pertab's report which would qualify as a medical opinion as defined in agency regulations.[50]  Accordingly, the ALJ was not required to assess the persuasiveness of Dr. Pertab's report under the framework applicable to medical opinion evidence.

The record demonstrates the ALJ adequately considered Dr. Pertab's evaluation in assessing Ms. D.'s RFC.  As noted above, the ALJ discussed and cited the report extensively throughout his decision.[51]  The ALJ acknowledged that Dr. Pertab's clinical testing documented "signs of cognitive fatigue in the form of difficulties with attention allocation and sustained attention," but he noted the report also showed Ms. D. was "capable of sustaining sufficient concentration, persistence, and pace to complete Wechsler Adult Intelligence Scale testing tasks, and her 93 full-scale IQ score [fell] squarely in the average range of intellectual functioning."[52]  The ALJ also noted that "mental status exam notes from the period at issue describe the claimant as an alert and attentive individual with normal mentation and linear thought processes who

---

[49] *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).

[50] In addition to the statements discussed above, Ms. D. asserts that Dr. Pertab "stated she would have significant difficulties with her ability to handle the stresses involved in physical and cognitive activities." (Opening Br. 16, Doc. No. 15 (citing Tr. 984–85).)  Although Dr. Pertab refers to stress responses generally, and recommends Ms. D. learn "when and how to push boundaries of physical and cognitive activity," (*see* Tr. 986), the court is unable to locate a statement like that referenced by Ms. D.  Regardless, such a statement would not qualify as a medical opinion for the same reasons as the other statements: it does not identify particular limitations in Ms. D.'s ability to perform work-related activities or address what Ms. D. could still do despite her impairments.

[51] (*See* Tr. 20–21, 26–29 (citing Dr. Pertab's report, identified as exhibit 17F, twenty-two times).)

[52] (Tr. 26 (citing Tr. 982–83, 991).)

answers questions and follows commands appropriately."[53] The ALJ concluded that "the substantial evidence of record is consistent with an individual capable of understanding, remembering, sustaining concentration, carrying out, and persisting at simple instructions and tasks in a workplace free of strict time deadlines and quota requirements as defined in the residual functional capacity."[54]

Thus, the record shows the ALJ considered and at least partly relied on Dr. Pertab's evaluation in assessing Ms. D.'s RFC. Indeed, the ALJ included functional limitations related to concentration and attention in the RFC and offered a detailed explanation for his findings on this issue.[55] The ALJ's findings are supported by substantial evidence, including the medical records cited in the decision. It is not apparent the RFC assessment conflicts with Dr. Pertab's evaluation, and Ms. D. does not explain what additional limitations should have been included based on Dr. Pertab's report. Under these circumstances, Ms. D. has demonstrated no error in the ALJ's consideration of the evidence from Dr. Pertab.

C. **Evidence from Mr. Stephens**

Ms. D. next argues evidence from Mark Stephens, a physical therapist, should have been evaluated as medical opinion evidence.[56] Mr. Stephens performed a vestibular evaluation on March 15, 2019, and provided a report containing testing results and treatment

---

[53] (*Id.* (citing Tr. 616, 619, 739, 879, 885, 922, 956, 988, 1003, 1049, 1058, 1071, 1115, 1128, 1487, 1589).)

[54] (*Id.*)

[55] (*See* Tr. 22, 26.)

[56] (Opening Br. 17, Doc. No. 15.)

recommendations.[57] Ms. D. argues the following line from the report qualifies as medical opinion evidence:[58] "Functional Limitations: Unable to access work, Unsafe in home, Unsafe ADLs/iADLs, Unsafe for wellness/leisure activities."[59]

These statements do not qualify as medical opinion evidence. As an initial matter, a statement about whether a claimant is unable to work addresses an issue reserved to the Commissioner, and the ALJ need not provide any analysis about how such evidence was considered.[60] And Mr. Stephens' statements that Ms. D. was "unsafe" with respect to activities of daily living, wellness, and leisure do not identify particular limitations in Ms. D.'s ability to perform work-related activities, nor do they address what Ms. D. could still do despite her impairments in a work setting.[61] Thus, these statements are not medical opinions under agency regulations, and the ALJ was not required to evaluate them as medical opinions.

The record shows the ALJ adequately considered the evidence from Mr. Stephens as "other medical evidence" in assessing Ms. D.'s RFC. The ALJ cited and discussed medical records from Mr. Stephens in the RFC analysis—specifically, in the portion of the decision addressing Ms. D.'s reported symptoms of headaches, fatigue, sensitivity to light and sound, and

---

[57] (Tr. 1144–52.)

[58] (Opening Br. 17, Doc. No. 15.)

[59] (Tr. 1149.) "ADL" refers to activities of daily living, and "iADL" refers to instrumental activities of daily living. *See Instrumental Activities of Daily Living Scale*, American Psychological Association (last updated June 2020), https://www.apa.org/pi/about/publications/caregivers/practice-settings/assessment/tools/daily-activities [https://perma.cc/54TU-5ZXY].

[60] 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i).

[61] *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

difficulties with balance.[62] Referencing Mr. Stephens' records, the ALJ noted that "vestibular therapy treatment records document improved dizziness and balance issues."[63] He also noted that other exam records described Ms. D. as having either normal balance or only mild balance problems, ambulating with a normal/intact gait, and demonstrating intact finger-to-nose testing, intact motor strength and sensation, and normal reflexes.[64] Based on this evidence, the ALJ found Ms. D. was "capable of performing light exertional work tasks that do not require climbing of ladders, ropes or scaffolds, involve only occasional balancing, stooping, kneeling, and crouching, and do not involve exposure to hazards as described in the residual functional capacity."[65]

Thus, the record shows the ALJ considered medical evidence from Mr. Stephens in assessing Ms. D.'s RFC. The ALJ also included functional limitations related to vestibular issues such as balance in the RFC, and he gave a detailed explanation for his findings on this issue.[66] These findings are supported by substantial evidence, including the medical records cited in the decision. Ms. D. has demonstrated no error in the ALJ's consideration of the evidence from Mr. Stephens.

---

[62] (*See* Tr. 24–25 (citing Tr. 1137–76, identified as exhibit 24F).)

[63] (Tr. 25 (citing Tr. 1137–76, 1184).)

[64] (Tr. 24–25 (citing Tr. 616–17, 620, 835, 879, 885, 888, 923, 933, 1041, 1049, 1115, 1117, 1125, 1129, 1254, 1554, 1589, 2154, 2270).)

[65] (Tr. 25.)

[66] (*See* Tr. 22, 24–25.)

CONCLUSION

Because the ALJ properly considered medical evidence from Dr. Pertab and Mr. Stephens, and the RFC findings are supported by substantial evidence, the Commissioner's decision is affirmed.

DATED this 16th day of January, 2024.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge